UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CHARLES and CAROL SWEET, as Administrators of the Estate of SHAWN SWEET; CHARLES and CAROL SWEET, Individually,

Plaintiffs

VS.

AMERICAN FOAM CORPORATION, et al.,

Defendants

C.A. NO.: 04-26-L 56

**DEFENDANT FOAMEX INTERNATIONAL, INC.'S REPLY MEMORANDUM IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS**

Plaintiffs' Response in Opposition to Foamex International, Inc.'s Motion to Dismiss ("Opposition") consists primarily of a laundry list of issues on which Plaintiffs claim to need discovery. Rather than address the merits of Foamex's Motion as a matter of law, Plaintiffs argue that they need discovery on everything from Foamex's corporate acquisitions to the chemical composition of polyurethane foam. Plaintiffs should not be allowed to stave off the Court's scrutiny of the legal sufficiency of their claims by attempting to build a wall of immaterial facts.

Foamex's Motion to Dismiss is based on the legal theories and factual assertions pled in the Complaint. Contrary to Plaintiffs' implication in their Opposition, their legal theories against Foamex are not novel, but consist of conventional allegations of negligence, strict liability, failure to warn and breach of warranty. Nor are Plaintiffs' factual assertions complex. They allege that after Foamex manufactured and sold bulk foam to American Foam Corporation, a

47

series of acts and omissions by other defendants created dangerous conditions at The Station nightclub, which in turn caused a fire which resulted in Plaintiffs' injuries. As Foamex's opening Memorandum demonstrates, the negligent and illegal acts and omissions of other defendants alleged in the Complaint broke the casual chain between Foamex's acts and Plaintiffs' injuries as a matter of law.

## I. As a Matter of Law, Plaintiffs Can Establish Neither Duty Nor Proximate Cause Against Foamex.

Plaintiffs do not dispute that they must establish that Foamex owed them a legal duty and that Foamex's alleged production and sale of polyurethane foam was a proximate cause of their injuries. Plaintiffs try to avoid addressing these indispensable elements by speculating about possible fact scenarios that might unfold in discovery. But taking Plaintiffs' allegations in the Complaint as true for purposes of Foamex's Motion, Plaintiffs cannot, as a matter of law, establish either duty or proximate cause.[1]

### A. Foamex did not have a legal duty to prevent the fire at The Station.

Plaintiffs agree that whether a duty exists under any particular set of circumstances is a question of law to be determined by the Court. (Plaintiffs' Opposition, p. 14.) Foamex's opening Memorandum discussed the factors that the Rhode Island Supreme Court considers in determining whether a duty exists. Those factors include, "the foreseeability and likelihood of the injury to the Plaintiff, the connection between the Defendant's conduct and the injuries suffered, the policy of preventing future harm, and the consequences to the Defendant and the

[1] "As with any document filed with the Court, the complaint must adhere to the standards of Rule 11. Fed. R. Civ. P. 11(b). The attorney must attest that he or she has a good faith basis for

community of imposing a duty of care on the Defendant with resulting liability for breach." *Santucci v. Citizens Bank of Rhode Island*, 799 A.2d 254, 256-257 (R.I. 2002).

Although Plaintiffs acknowledge that the Court is to consider "all relevant factors" in determining the existence of a duty, Plaintiffs proceed to discuss only one such factor – foreseeability – under the circumstances of this case. Then, having framed the issue of duty as solely a function of whether their injuries were foreseeable, Plaintiffs claim that the issue cannot be determined without discovery of "whether [Foamex] designed, manufactured, and sold foam which it knew or should have known would be used for soundproofing and whether they knew or should have known whether it could safely withstand the foreseeable product use or misuse that occurred during its use." (Plaintiffs' Opposition, p. 16.)

The Rhode Island Supreme Court has expressly rejected a duty analysis based solely on the question of foreseeability.[2] In an opinion rendered just last month, the court held that because of the intervening breaks in the chain of causation, the absence of the causal element outweighed the foreseeability of the plaintiff's injury as well as public policy arguments, creating no duty of care. *Carroll v. Yeaw,* 850 A.2d 90, 2004 R.I. LEXIS 108 (R.I. 2004).

In *Carroll*, the defendant was a registered contractor who allowed an unregistered colleague to use his name and registration number to obtain a building permit and build a public stairway on which the plaintiff was injured. The plaintiff claimed that there were design and

---

making allegations after a reasonable inquiry. *Id.*" *Arruda v. Sears, Roebuck & Co.*, 273 B.R. 332, 340 (D.R.I. 2002).

[2] Foamex does not concede that Plaintiffs could establish the element of foreseeability in this case. As discussed in Foamex's opening Memorandum, it is inconceivable that Foamex should have anticipated the unlikely chain and sequence of intervening acts and omissions alleged in the

construction flaws in the stairway and sued the registered contractor for negligence in allowing an unqualified contractor to use his credentials to obtain the building permit. The trial court granted summary judgment for the defendant on the grounds that the defendant owed no duty of care to lawful users of the stairway, such as the plaintiff, to ensure that it was properly constructed. On appeal, the Rhode Island Supreme Court affirmed.

The Supreme Court noted that "several factors disrupt the closeness of the connection between defendant's conduct in allowing his name, address and registration number to be listed on the permit application and [the plaintiff's] injury." *Id.*, 2004 R.I. LEXIS at *7. In particular, the court pointed to the unregistered contractor's omissions and the building inspector's failure to identify any problems in the completed stairway. The court found that "these factors create a series of breaks between defendant's assistance with the building permit and [the plaintiff's] injury, thus interrupting any causal connection between the two events." *Id.* at *8.

The correlation between Foamex's alleged sale of bulk foam and Plaintiffs' injuries is far more tenuous than the causal connection analyzed in *Carroll*. The Complaint here states that the following acts took place during the more than 2½ years between Foamex's alleged sale of bulk foam to American Foam and the February 20, 2003 fire at The Station nightclub:

- American Foam and its salesman knowingly sold non-fire retardant packing foam to the Derderians, who used it as illegal soundproofing material for walls and ceilings.
- For two years, three governmental inspections overlooked the inappropriate and illegal use of the foam on the walls and ceilings and failed to order that it be removed.
- The Derderians permitted the illegal use of pyrotechnics on The Station premises without the license required of a business having pyrotechnics.

---

Complaint that lead to Plaintiffs' injuries. But even if foreseeability were arguable, foreseeability alone does not determine duty.

- Great White illegally used pyrotechnics in their act, in a facility that was not licensed for that use, which ignited the fire.
- The Derderians violated other OSHA regulations, fire codes and recognized safe practices by overcrowding The Station, failing to have exits cleared and marked, and failing to properly respond to the fire ignition.

Each of these acts alone is sufficient to break the causal chain between Foamex's acts and the Plaintiffs' injuries. Taken together, they form a series of breaks which interrupt any such causal connection – just as the omissions of the building official and the acts of the unregistered contractor formed a series of breaks in the causal chain in *Carroll*. The disruption in the causal chain overwhelms any foreseeability that Plaintiffs would impute to Foamex.

**B. Plaintiffs cannot establish proximate cause between Foamex's alleged acts and Plaintiffs' injuries.**

The Rhode Island Supreme Court's causation analysis in *Carroll* is instructive in addressing not only the element of duty but also proximate cause. *Carroll* is consistent with a well-developed body of Rhode Island law which recognizes that an intervening act will cut the causal connection between another party's prior act and a plaintiff's injury, where the intervening act was not foreseeable as the natural and probable consequence of the prior act.

Under Rhode Island law, a defendant's act of negligence is considered a remote cause, and *not* a proximate cause of a plaintiff's injury "when there is an intervening act on the part of a responsible third person unless it be made to appear that the defendant should have anticipated that such an intervening act would be a natural and probable consequence of his own act." *The Travelers Insurance Co. v. Priority Business Forms, Inc.*, 11 F. Supp. 2d 194, 199 (D.R.I. 1998) (citing *Nolin v. Bacon*, 216 A.2d 126 (R.I. 1966)). Rhode Island courts, and courts applying Rhode Island Law, have not hesitated to find proximate cause absent as a matter of law when independent intervening

acts have rendered a defendant's original conduct remote and tenuously linked to the plaintiff's injuries. *Travelers*, supra; *Splendorio vs. Bilray Demolition Co.*, 682 A.2d 461 (R.I. 1966); *Clements v. Tashjoin*, 168 A.2d 472 (R.I. 1961).[3]

Plaintiffs cite *Hueston v. Narragansett Tennis Club, Inc.*, 502 A.2d 827 (R.I. 1986) and *Roberts v. Kettelle*, 356 A.2d 207 (R.I. 1976), to support their contention that a concurring proximate cause, rather than an intervening cause, will not break the causal chain and render a defendant's original act of negligence inoperable. Foamex agrees that concurrent proximate cause and intervening cause are two different things. The cases that Plaintiffs cite clearly demonstrate this distinction and, in fact, are helpful to illustrate that the series of acts by other defendants alleged in Plaintiffs' Complaint clearly falls in the category of intervening, rather than concurrent, causes.

In *Hueston*, the plaintiff injured her finger when the unusual ring she was wearing caught on a building structure of the defendant's indoor tennis club. On appeal, the court held that the plaintiff's wearing of the ring did not render the defendant's original conduct totally inoperative, but was at most a concurrent cause that united with the defendant's negligence to cause the injury. *Id.*

In *Roberts v. Kettelle*, also cited by Plaintiffs, a speeding car with two passengers rear-ended a police cruiser that was traveling slowly in the high speed lane on an interstate highway. Following a jury award against the police officer, he argued on appeal that his conduct "created no more than a past condition or circumstance which left [the other driver's] failure to keep a

[3] These cases and others are discussed more fully in Foamex's opening Memorandum at pp. 15-18.

lookout as the sole proximate cause of said injuries." *Id.* at 294. The Supreme Court dismissed that argument, finding that the officer's "original negligence is not so remote as to be considered merely a past condition or circumstance." *Id.* at 295.

The distinctions between the circumstances in *Hueston* and *Roberts* and the events here are obvious. In those cases, there were no independent acts by a continuum of responsible persons that took place long after the defendants' original acts of negligence. Indeed, there were no other actors at all in those cases besides the plaintiffs and the contemporaneously acting defendants. Here, there were at least five separate, negligent and illegal acts by others in the more than two and a half years between the alleged sale of bulk foam to American Foam and the February 20, 2003 fire.

**II. As a Matter of Law, Foamex is not Liable Under the Bulk Supplier Doctrine.**

In responding to Foamex's arguments that it is not liable as a bulk supplier, Plaintiffs again fail to acknowledge their own allegations in the Complaint which form the basis for Foamex's motion. Under the bulk supplier doctrine, a provider of a bulk material like polyurethane foam is not liable unless the bulk product itself is defective, or the bulk supplier participates in the integration of its product into an end product, which is defective as a result of the integration. It has been acknowledged that bulk foam, which can be fabricated into hundreds of safe applications, is not a defective or unreasonably dangerous product as a matter of law. *In re Silicone Gel Breast Implants Prods. Liability Litig.*, 887 F. Supp. 1463 (N.D. Ala. 1995). Indeed, Plaintiffs do not even allege that bulk foam is unreasonably dangerous or defective, but rather that it "could not be safely used for sound-proofing material." (Complaint ¶ 68(a)). Thus, Plaintiffs' allegation that the foam installed in The Station was "defective," addresses not the

*bulk foam* manufactured by Foamex, but *the altered end product and application* selected by American Foam and the Derderians.

Plaintiffs do not allege that Foamex participated in the selection or integration of foam for use as sound insulation at The Station. Rather, they placed that responsibility solely on defendant Barry H. Warner, an employee of American Foam.[4] Thus, under Plaintiffs' own allegations, American Foam, through its employee Warner, was a knowledgeable buyer who processed the bulk foam into the end product – dimpled foam sheets intended for packaging applications – which it sold to the Derderians for an entirely different end use as sound insulation. Under the bulk supplier doctrine, Foamex had no duty to warn American Foam or its customers of risks attendant to American Foam's application, especially where American Foam was already fully aware of those risks.[5]

**III. Foamex's Motion is not Premature.**

Counsel for Plaintiffs has submitted an affidavit in support of Plaintiffs' Opposition, listing areas on which he contends discovery is necessary before Foamex's motion can be addressed. However, when those areas are examined in light of the applicable law above, it is

[4] They allege that "the defendant Barry Warner sold the foam material to the defendants Jeffrey Derderian, Michael Derderian, and/or DERCO, d/b/a The Station, to be used as sound-proofing material at the former Station night-club and represented to said defendants that the foam could be safely and appropriately used as sound-proofing material when he knew or should have known that in fact the foam was highly flammable and toxic and could not be safely used for sound-proofing in a night-club where smoking and use of pyrotechnics was permitted." (Complaint ¶ 104.)

[5] Plaintiffs are, of course, fully aware that General Foam's invoices and material safety data sheets to American Foam contained a very explicit warning regarding the flammability of polyurethane foam. *See* Exh. 2 to the Aff. of Margaret Hebner ¶¶ 13-14, submitted with Foamex's opening Memorandum in support of Rule 12(b)(6) motion to dismiss.

plain that Plaintiffs can develop no facts on which they can prevail on the claims pled against Foamex.

First, notwithstanding the allegations in their Complaint that Foamex manufactured the foam at issue (Complaint ¶ 6), Plaintiffs argue in their Opposition that the foam was in fact manufactured by General Foam Corporation (GFC), which was in turn acquired by Foamex, so thus they must have discovery regarding the terms and conditions of Foamex's acquisition of GFC.[6] (Aff. of Brian R. Cunha ¶¶ 6, 7). However, for purposes of this motion, it is immaterial whether Foamex or GFC supplied the foam to American Foam.[7] In either case, Plaintiffs have not adequately pled and cannot establish the elements of duty and proximate cause, as demonstrated in Section I, *supra*. Moreover, the bulk supplier doctrine discussed above applies to the bulk foam purchased, fabricated and processed into an end product by American Foam, regardless of which entity supplied the bulk material.

Next, Plaintiffs claim that they need discovery regarding "the actions of [GFC] or its agents with respect to the sale of the foam to American Foam" and General Foam's "advertisements, promotions, warnings, lack of warning, representation to customers, etc." (Aff. of Brian R. Cunha ¶¶ 8, 9). Again, Plaintiffs' plea for discovery is merely an effort to deflect the Court's analysis of the legal sufficiency of their claims. Even assuming some negligent conduct

---

[6] In a related case pending before this Court, other plaintiffs have alleged that GFC supplied the foam to American Foam and that Foamex thereafter acquired GFC and assumed its liabilities. *See Passa, et al vs. Derderian, et al.*, United States District Court of the District of Rhode Island, CA No. 03-148-L, Seconded Amended Complaint ¶¶ 26, 27.

[7] Foamex does not concede that either Foamex or GFC manufactured or supplied the foam at issue, and note that Plaintiffs have the burden of establishing that fact. However, for purposes of argument here, it is assumed that one of them may have supplied it.

by Foamex (or GFC), the litany of intervening acts pled in the Complaint precludes any possibility of finding proximate cause between its conduct and Plaintiffs' injuries. Furthermore, the Complaint's allegations that American Foam was aware of the risks posed by the specific use for which it sold the foam, precludes liability against Foamex or GFC under the bulk supplier doctrine as well.

Lastly, Plaintiffs claim that they need discovery regarding Foamex's or GFC's knowledge of foam characteristics.[8] Once again, it can be assumed for purposes of argument that Foamex (and GFC) knew of foam's flammability and toxicity. Plaintiffs still cannot establish proximate cause in light of the catalogue of unanticipated intervening acts asserted in the Complaint. Nor can Foamex or GFC be liable as a bulk supplier in light of American Foam's awareness of the risk of its application as pled in the Complaint.

**CONCLUSION**

For the reasons set forth in Foamex's opening Memorandum and this Reply, as a matter of law, Foamex requests that the Court dismiss, with prejudice, all of Plaintiffs' claims against it.

---

[8] Plaintiffs seek "the prior knowledge that GFC or its agents or employees may have had with regards to the foam, its customary use, flammability, production, etc." and "research done by [GFC] with respect to its toxicity and flammability and its understanding of its use, or its foreseeable misuse, in light of its physical qualities." (Aff. of Brian R. Cunha, ¶¶ 10, 11).

Defendant

FOAMEX INTERNATIONAL, INC.
By Its Attorneys,

HIGGINS, CAVANAGH & COONEY

Gerald C. DeMaria, Esq. #0637
James A. Ruggieri, Esq. #2828
123 Dyer Street
Providence, RI 02903
Tel: (401) 272-3500
Fax: (401) 273-8780

Of Counsel:

Carl A. Henlein, Esq.
John R. Crockett, III, Esq.
Susan S. Wettle, Esq.
FROST BROWN TODD LLC
400 West Market Street, 32nd Floor
Louisville, KY 40202-3363

**SWEET CERTIFICATION**

I hereby certify that a copy of the within document was filed on this 30th day of July, 2004, to:

Brian R. Cunha, Esq.
311 Pine Street
Fall River, MA 02720

Lauren DiSimone Wilkins, Esq.
Ronald P. Langlois, Esq.
Smith & Brink, PC
One State Street, Suite 401
Providence, RI 02908

Christopher C. Fallon, Jr. Esq.
Cozen & O'Connor
1900 Market Street
Philadelphia, PA 19103

Thomas Angelone, Esq.
Hodosh, Spinella & Angelone
One Turks Head Building
Suite 1050
Providence, RI 02903

James Lee, Esq.
Dept. of the Attorney General
150 South Main Street
Providence, RI 02903

William P. Robinson, III, Esq.
Stephen M. Prignano, Esq.
Stephen MacGillivray, Esq.
Edwards & Angell
One Financial Plaza, Suite 2700
Providence, RI 02903

Scott Tucker, Esq.
Tucker Heifetz & Saltzman LLP
Three School Street
Boston, MA 02108

Joseph Krowski, Esq.
30 Cottage Street
Brockton, MA 02301

Mark T. Reynolds, Esq.
Anthony DeMarco, Esq.
Boyer, Reynolds & DeMarco
170 Westminster Street, Suite 200
Providence, RI 02903

Edward T. Hinchey, Esq.
Sloane & Walsh, LLP
Three Center Plaza
Boston, MA 02108

Joseph Cavanagh, Jr., Esq.
Kristen E. Rodgers, Esq.
Blish & Cavanagh
30 Exchange Terrace
Providence, RI 02903

Marc DeSisto, Esq.
DeSisto Law Offices
211 Angell Street
Providence, RI 02906

Fred A. Kelly, Jr., Esq.
Randall L. Souza, Esq.
Ian C. Ridlon, Esq.
Nixon Peabody LLP
One Citizens Plaza - Suite 700
Providence, RI 02903

Andrew Trevelise, Esq.
Reed Smith LLP
2500 One Liberty Place
Philadelphia, PA 19103

Edward M. Crane, Esq.
Deborah Solmor, Esq.
Skadden, Arps, Slate, Meagher & Flom
333 West Wacker Drive
Chicago, IL 60606

W. Thomas McGough, Jr., Esq.
James J. Restivo, Jr., Esq.
Reed & Smith LLP
435 Sixth Avenue
Pittsburgh, PA 15219

James H. Reilly, Esq.
Donald Maroney, Esq.
Kelly, Kelleher, Reilly & Simpson
146 Westminster Street
Providence, RI 02903

James T. Murphy, Esq.
Kelly N. Michels, Esq.
Hanson Curran LLP
146 Westminster Street
Providence, RI 02903

Carl A. Henlein, Esq.
John R. Crockett, III, Esq.
Susan S. Wettle, Esq.
FROST BROWN TODD
400 West Market Street, 32nd Floor
Louisville, KY 40202-3363

Howard Merten, Esq.
Eric M. Sommers, Esq.
Vetter & White
20 Washington Place
Providence, RI 02903

Curtis R. Diedrich, Esq.
SLOANE AND WALSH, LLP
127 Dorrance Street
Providence, RI 02903

Jan Audeni
___________________________