UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CHARLES and CAROL SWEET, et al | : | |
| Plaintiffs, | : | |
| | : | C.A. NO.: 04-56-L |
| V. | : | |
| AMERICAN FOAM CORPORATION et al., | : | |
| Defendants | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' SWEET, ET AL OBJECTION TO THE MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(6)FILED BY THE STATE OF RHODE ISLAND AND IRVING J. OWENS**

106

TABLE OF CONTENTS

INTRODUCTION ..... 1
FACTS ..... 2
STANDARD OF REVIEW ..... 3
ARGUMENT ..... 4

I. RHODE ISLAND HAS MADE A "BLANKET WAIVER" OF ITS SOVEREIGN IMMUNITY BY ENACTING R.I. GEN. LAWS § 9-31-1 ..... 4

A. Eleventh Amendment Immunity Has Been Statutorily Waived ..... 4

II. THE STATE IS LIABLE FOR THE NEGLIGENCE OF OWENS AND LAROCQUE ..... 5

A. Owens And Larocque Were Agents Of The State Of Rhode Island ..... 5

III. DEFENDANTS ARE NOT PROTECTED BY THE "PUBLIC DUTY DOCTRINE" 6

A. Defendants' Reliance On Pre-Egregious Conduct Exception Cases Is Misplaced ..... 6

B. Defendants Are Liable Because Owens' and Larocque's Misconduct Was Egregious ..... 8

1. Plaintiffs Allegations As To Owens and Larocque ..... 8

2. Rhode Island's Cases Have Recognized The "Creation" Of Egregious Circumstances On Far Milder Facts ..... 9

C. It Is Virtually Impossible, At The Pleadings Stage, To Rule Out Egregiousness ..... 10

D. Larocque Owed Plaintiff A Special Duty ..... 11

IV. DEFENDANT OWENS IS NOT PROTECTED BY § 23-28.2-17 BECAUSE GOOD FAITH IS A QUESTION OF FACT ..... 11

A. §23-28.2-17 Requires That Inspections Be Done in Good Faith ..... 11

B. The Actions Of Owens Did Not Amount To Good Faith ..... 12

C. The State Has Improperly Sought Its Dismissal Under 23-28.2-17 ......13

1. The State Is Not Included In The Class Of Individuals Provided Immunity ......13

2. R.I. Gen. Laws § 23-28.2-17 Is Analogous To The Building Inspector Immunity Statute ......14

V. THERE IS NO QUASI-JUDICIAL IMMUNITY FOR MINISTERIAL INSPECTION FUNCTIONS ......16

A. Defendants' Reliance On Rhode Island Administrative Agency Cases Is Misplaced ...... 16

B. Ministerial Functions Are Not Immune From Liability, While Discretionary Ones Are ....18

C. The Rhode Island Building Inspection Cases Implicitly Fall Outside The Quasi-Judicial Realm ......23

D. Even If The Fire Marshal Had Some Discretionary Functions, As To Which He Is Immune, Such Immunity Would Not Apply To His Ministerial Or Mandatory Duties ......23

VI. RHODE ISLAND LAW RECOGNIZES A CAUSE OF ACTION ARISING FROM NEGLIGENTLY PERFORMED GOVERNMENTAL BUILDING INSPECTIONS ......24

A. Rhode Island Case Law Evidences A Public Policy Favoring Municipal Liability For Negligently Performed Building Inspections ...... 24

1. The Rhode Island Supreme Court Has Imposed Liability On Municipalities For Negligent Building Inspections...... 24

2. Defendants' Reliance Upon Failure-To-Enforce Cases Is Misplaced .......26

3. Defendants Reliance Upon Kentucky and Vermont Cases is Misplaced......27

VII. THE USE OF PYROTECHNICS WAS NOT SO UNFORESEEABLE AS TO RENDER IT AN "INTERVENING SUPERSEDING CAUSE" ......30

A. It Was Reasonably Foreseeable That Fire Safety Code Violations And Overcrowding Would Result In Harm ........ 31

B. Plaintiff Does Not Allege That The Fire Was Intentionally Ignited. ........ 33

C. Even Intentional Criminal Conduct May Be Foreseeable ........ 34

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CHARLES and CAROL SWEET, et al | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| | : | |
| | : | C.A. NO.: 04-56-L |
| V. | : | |
| | : | |
| AMERICAN FOAM CORPORATION et al., | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' SWEET, ET AL OBJECTION TO THE MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(6) FILED BY THE STATE OF RHODE ISLAND AND IRVING J. OWENS**

## INTRODUCTION

Defendants State of Rhode Island and Irving J. Owens have moved to dismiss Plaintiff's action against them pursuant to Fed.R.Civ.P. 12(b)(6). The Plaintiff submits, however, that when her factual averments in the Complaint are taken as true, or read in the light most favorable to her, they state a claim upon which relief can be granted against the these Defendants.[1] Accordingly, Defendants' Motion to Dismiss should be denied.

## FACTS

[1] The complaint initiating the within action was filed on August 8, 2003. With the advent of the Master Complaint in Gray v. Derderian Civil Action No. 04-312L, it is Plaintiff's intention to move to amend to conform her allegations to those contained in the Master Complaint (as amended).

FACTS

On February 20, 2003, a fire broke out at The Station Nightclub ("The Station") while a rock band named Great White was performing. Pyrotechnics were ignited at approximately 11:00 p.m. and, almost immediately, ignited "egg crate" foam material affixed to the walls and ceiling behind and above the stage. The existence of this highly flammable material at The Station, which was installed in or about the Summer of 2000, was a violation of the R.I. Fire Safety Code (hereinafter 'Fire Code'). In addition, the ignition of pyrotechnics without a permit was a violation of the Rhode Island General Laws. Several other conditions that constituted violations of the Fire Code existed at The Station on the evening of February 20, 2003. As a result of the fire, 100 individuals were killed, and more than 200 were injured, including the Plaintiffs.

By virtue of an appointment by the Governor, Owens was the state fire marshal for the relevant time period. The state fire marshal is the sole authority having jurisdiction to enforce the Fire Code. Owens' responsibilities included the appointment of deputy state fire marshals charged with enforcing the provisions of the Fire Code as well as the formulation, coordination and implementation of programs relating to fire prevention, fire protection and fire inspection. Owens' duties also included "...conducting and supervising fire safety inspections." R.I. Gen. Laws § 23-28.2-4. Defendant Denis P. Larocque was an assistant deputy fire marshal serving at the pleasure and direction of Owens during the relevant time period, including the evening of the fire.

Larocque personally inspected The Station on at least three occasions prior to February 20, 2003. His inspections failed to identify several violations of the Fire Code,

existed on the evening of February 20, 2003 also existed during Larocque's two prior inspections. Specifically, Larocque's November 10, 2001 inspection report states, "door near stage cannot swing in." Larocque's November 20, 2002 report, created only three months prior to the fire, indicates the same violation by stating, "exit door swings wrong direction (stage door)." This same violation is apparent from videotape of the fire on February 20, 2003. In addition, Larocque increased the maximum occupancy of The Station in March of 2000 by classifying the entire premises as "standing room," contrary to a report that he prepared only three months earlier.

STANDARD OF REVIEW

Defendants' motion must be denied unless it is "clear beyond a reasonable doubt that the plaintiff would not be entitled to relief under any set of facts that could be proven in support of the plaintiff's claim." Ellis v. Rhode Island Public Transport Authority, 586 A.2d 1055, 1057 (R.I. 1991). "The complaint should not be dismissed merely because Plaintiffs' allegations do not support the legal theory he intends to proceed on, since the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory." 5A Wright & Miller, Federal Practice and Procedure: Civil 2d § 1357. "The standard for granting a Rule 12(b)(6) motion is identical to that for giving a judgment on the pleadings under Rule 12(c): the defendant must be able to demonstrate to a certainty that the plaintiff will not be entitled to relief under any set of facts that might be proved at trial in support of his or her claim." Halev v. Town of Lincoln, 611 A.2d 845, 850 n. 1 (R.I. 1992).

## ARGUMENT

### I. RHODE ISLAND HAS MADE A "BLANKET WAIVER" OF ITS SOVEREIGN IMMUNITY BY ENACTING R.I. GEN. LAWS § 9-31-1

#### A. Eleventh Amendment Immunity Has Been Statutorily Waived

Defendants have placed considerable reliance upon immunity afforded by the Eleventh Amendment of the United States Constitution. It is clear however that by enacting R.I. Gen. Laws § 9-31-1, Rhode Island has explicitly waived its Eleventh Amendment immunity when named as a defendant in tort actions:

> The state of Rhode Island and any political subdivision thereof, including all cities and towns, shall, subject to the period of limitations set forth in § 9-1-25, hereby be liable in all actions of tort in the same manner as a private individual or corporation...

(emphasis added). Defendants correctly point out that a statute in derogation of the common law must be strictly construed. Defendants' Memo, p. 5. However, the Rhode Island Supreme Court has ruled on several occasions that the enactment of R.I. Gen. Laws § 9-31-1 constitutes a "blanket waiver" of immunity in tort actions such as the case at bar.

In Gagnon v. State, 578 A.2d 656, 658 (R.I. 1990), the plaintiff's daughter was sexually assaulted at a daycare facility that was licensed and previously investigated by the State of Rhode Island. In Gagnon, similar to the within action, the State incorrectly perceived the effect of R.I. Gen. Laws § 9-31-1:

> In its brief the state incorrectly perceives its potential liability of § 9-31-1 as minimal. Quite to the contrary, however, this court had stated that although there are limits to its liability, the state has made a "blanket waiver" of its sovereign immunity by enacting § 9-31-1.

Gagnon, 578 A.2d at 658 (emphasis added); citing, Laird v. Chrysler Corp., 460 A.2d 425, 429 (R.I. 1983); O'Brien v. State, 555 A.2d 334, 336 (R.I. 1989). It is clear, that Defendants may only be afforded protection from liability by virtue of the public duty doctrine.

## II. THE STATE IS LIABLE FOR THE NEGLIGENCE OF OWENS AND LAROCQUE

### A. Owens And Larocque Were Agents Of The State Of Rhode Island

The State is responsible for the negligence of Owens and Larocque under the doctrine of *respondeat superior.* As ruled in Vargas Manufacturing Co. v. Friedman, 661 A.2d 48, 53 (R.I. 1995), "[a]n employer is liable for the acts of an employee when the employee is acting within the scope of his or her employment." Therefore, the State is liable for Owens' negligence. Defendants have attempted to distance themselves from liability arising from Larocque's actions by claiming that no inspections were performed by Rhode Island at The Station. Defendants' Memo. p. 2, n. 4. This is simply not true, as evidenced by the relevant statutes and by a contradictory (and correct) statement contained within Defendants' own Memorandum that "...the Fire Marshal (more correctly his deputies) in the instant case had to apply the governing rules, the State Fire Code, to the Station nightclub..." Defendants' Memo. p. 19, n. 11. Whether Larocque was an agent of the State is clearly an issue of fact. Calenda v. Allstate Ins. Co., 518 A.2d 624, 628 (R.I. 1986) ("[T]he existence and scope of an agency is essentially a factual determination.") (citations omitted). Petrone v. Davis, 118 R.I. 261, 266, 373 A.2d 485, 487 (1977) ("And we have also noted that the existence and scope of an agency relationship is essentially a factual determination."). In order to establish an agency relationship, three elements must be proven:

(1) the principal must manifest that the agent will act for him,
(2) the agent must accept the undertaking, and
(3) the parties must agree that the principal will be in control of the undertaking.

Toledo v. Van Waters & Rogers, Inc., 92 F.Supp.2d 44, 53 (D.R.I. 2000); Rosati v. Kuzman, 660 A.2d 263, 265 (R.I. 1995); Norton v. Boyle, 767 A.2d 668, 672 (R.I. 2001). The three elements of agency, as enunciated by the Rhode Island Supreme Court, are easily satisfied by a cursory review of the Fire Code.

There has been *a manifestation* that Larocque was acting on behalf of these Defendants. Specifically, R.I. Fire Safety Code § 1-4.1 states "the state fire marshal shall have authority to appoint and certify as many deputy state fire marshals and assistant deputy state fire marshal as are deemed necessary to strictly enforce the provisions of this Code." As evidenced by his conduct of inspecting The Station on several occasions, it is obvious that Larocque *accepted* the undertaking. Finally, the State was *in control of* Larocque as evidenced by the fact that he "...serve[d] at the pleasure of the state fire marshal." R.I. Gen. Laws § 23-28.2-9. In addition, R.I. Gen. Laws § 23-28.2 required Owens to supervise fire inspections including the inspections performed by Larocque. Therefore, the State is liable for the negligence of Owens and Larocque.

## III. DEFENDANTS ARE NOT PROTECTED BY THE "PUBLIC DUTY DOCTRINE"

### A. Defendants' Reliance On Pre-Egregious Conduct Exception Cases Is Misplaced

Defendants have asserted that Plaintiffs can only bring this action if and only if, they can allege the breach of a special duty owed to them as specifically identifiable individuals. Defendants' Memo, p. 5. However, the cases relied upon by Defendants in support of this position were decided *before* the Rhode Island Supreme Court enunciated the egregious conduct exception to the public duty doctrine in 1991. For instance, Defendants rely upon Ryan v. State Department of Transportation, 420 A.2d 841 (R.I. 1980), Orzechowski v. State, 485 A.2d 545 (R.I. 1984), Knudsen v. Hall, 490 A.2d 976 (R.I. 1985) and

Kowalski v. Campbell, 520 A.2d 973 (R.I. 1987). However, in Verity v. Danti, 585 A.2d 65, 67 (R.I. 1991), where the egregious conduct exception was first pronounced, the Rhode Island Supreme Court specifically stated, "[i]t is important that we note that this abrogation of the public duty doctrine is not delineated in our previous cases addressing the same policy." The cases relied upon by Defendants do not accurately depict the current state of the law in Rhode Island.

A more accurate analysis of the Defendants' potential liability reveals that when it is alleged the State or a municipality is negligent in the performance of a governmental function, the State will be liable if: (1) it has acted egregiously; or (2) if the plaintiff is owed a special duty.[2] The Rhode Island Supreme Court has ruled the egregious conduct exception to the public duty doctrine does not require Plaintiffs to be specifically identifiable individuals for liability to extend to the State:

> We have also held in certain instances that the negligence of the State or its political subdivisions is so extreme that the plaintiff need not prove that he or she was a specific, identifiable, and a foreseeable victim or a member of a group of such victims in order to recover.

Haley v. Town, 611 A.2d 845. 849 (R.I. 1992) (emphasis added). In fact, Plaintiff alleges that Owens and Larocque, both agents of the State, were negligent in an egregious manner.[3]

The cases of Torres v. Damicis, 853 A.2d 1233 (R.I. 2004) and Haworth v. Lannon, 813 A.2d 62 (2003), both decided *after* the recognition of the egregious conduct exception and relied upon by Defendants, actually provide support for Plaintiff's cause of action. In Haworth, the Rhode Island Supreme

[2] Plaintiff alleges that Owens and Larocque were negligent in an egregious manner and that Larocque owed a special duty to Plaintiff.

[3] The Plaintiff asserts that the alleged conduct of Defendants Owens and Larocque was indeed egregious, and connotes a lack of good faith. As stated in fn. 1 above, Plaintiff will move to amend in conformance with the Master Complaint, which in Paragraphs 420, 435, and 439, more directly alleges egregious conduct on the part of Defendants Larocque and Owens.

Court ruled, "[I]f either exception were applicable [egregious conduct or special duty], the Town would be liable for the tortious acts of its agent . . ." 813 A.2d at 64. In Torres, grant of summary judgment for the defendant was upheld because the egregious conduct exception had not been met. 853 A.2d at 1241.[4] Notwithstanding the fact that Plaintiff has alleged that Larocque owed her a special duty, Torres and Haworth establish that the egregious conduct exception to the public duty doctrine does not require Plaintiff to be a specifically identifiable class of individuals.

B. Defendants Are Liable Because Owens' and Larocque's Misconduct Was Egregious

1. Plaintiff's Allegations As To Owens and Larocque

Defendants will not be afforded protection under the public duty doctrine if they had knowledge that they created a circumstance that forced an individual into a position of peril and subsequently chose not to remedy the situation. Verity v. Danti, 585 A.2d 65 (R.I. 1991). It is clear that the State/municipalities' knowledge can be actual or constructive. Bierman v. Shookster, 590 A.2d 402, 404 (R.I. 1991). As stated, supra, Plaintiff asserts that Owens and Larocque both were negligent in an egregious manner. Larocque failed to identify several violations of the Fire Code during his three prior inspections at The Station, failed to ensure that known violations were remedied, and questionably increased the capacity of The Station. Owens negligently coordinated, formulated and implemented education and training programs related to fire prevention, protection and inspection. In addition, Owens was negligent in carrying out his duty to conduct and supervise fire safety inspections as required by R.I.

[4] In both Haworth and Torres, the plaintiffs appealed from grants of summary judgment where no issue of material fact existed as to whether the special duty or egregious conduct exceptions to the public duty doctrine applied. Haworth, 813 A.2d at 63; Torres, 853 A.2d at 1253. Importantly, both cases had the benefit of discovery, unlike the case at bar.

Gen. Laws § 23-28.2-4. Similar to Verity and Bierman, Plaintiff alleges actual and constructive knowledge of circumstances that forced the Plaintiff into a position of peril.

2. Rhode Island's Cases Have Recognized The "Creation" Of Egregious Circumstances On Far Milder Facts

Plaintiff has alleged that that negligence of Owens and Larocque was a proximate cause of her injuries. The circumstances of this case are more egregious than other cases in which a finding of liability was upheld by the Rhode Island Supreme Court. In Verity, the State was aware of a tree that had existed for more than one hundred years and ultimately obstructed an entire sidewalk. Verity, 585 A.2d at 67. A pedestrian approached the obstruction, and was hit by an automobile when she stepped into the road to pass the tree. 585 A.2d at 65-66. In Martinelli v. Hopkins, 787 A.2d 1158, 1169 (R.I. 2001), a trial justice found that the Town of Burrillville failed to inspect a licensed premises, permitted an entertainer to assemble an indefinite crowd size, and had abundant notice that a festival was an extraordinary event. Id. at 1168. In Martinelli, the plaintiff was injured because a rotted tree fell on him when people attempted to urinate in the woods by traversing a snow fence that was attached to the rotted tree. 787 A.2d at 1163. Finally, in Bierman v. Shookster, 590 A.2d 402, 404 (R.I. 1991), an automobile accident occurred in Providence as a result of a malfunctioning traffic signal. The court ruled, "[b]y failing to correct the malfunction, of which it should have been aware, the city jeopardized the safety of those utilizing the intersection in reliance on the traffic lights." 590 A.2d at 404. (emphasis added). The actions and omissions of Owens and Larocque are no different than the actions and omissions in Verity, Martinelli and Bierman, where egregious conduct was found to exist. Therefore, Defendants' motion should be denied.

Finally, it is clear that the "creation" of a circumstance can occur by omission. For instance, in Verity the State failed to remove a tree. In Bierman, the City of Providence failed to repair a malfunctioning traffic light. In Martinelli, the Town of Burrillville licensed an event without inspecting the premises and "clos[ed] its eyes to risks and hazards that attendees would encounter." Similar to these omissions, Owens and Larocque closed their eyes to risks and hazards encountered by occupants of The Station on the evening of February 20, 2003.

C. It Is Virtually Impossible At The Pleadings Stage To Rule Out Egregiousness

The Rhode Island Supreme Court has specifically stated it is "virtually impossible" for the State to obtain judgment on the pleadings in cases involving the public duty doctrine.

> It is virtually impossible for the State to sustain such a burden when the pleadings are viewed in a manner most favorable to the plaintiff. Consistent with Rule 8's pleading requirements, the plaintiff is not obligated to provide in the complaint details concerning the state's awareness of or reaction to the circumstances surrounding his or her claim. Such information is, in any event, frequently unavailable to a plaintiff at the pleading stage. Any gaps in the pleadings regarding the state's conduct as it bears upon the plaintiff's action are to be read in the plaintiff's favor. In light of the fact-intensive exceptions to the public duty doctrine, the trial court is unlikely to be able to hold that the plaintiff could not establish the state's negligence under any set of facts that might be adduced at trial. Accordingly, we conclude that controversies in which the public duty doctrine are asserted as a defense will rarely be appropriate for disposition by means of a Rule 12(c) motion for judgment on the pleadings.

Haley v. Town of Lincoln, 611 A.2d 845, 849-50 (emphasis added)(expressly applying this holding to motions to dismiss for failure to state a claim under Rule 12(b)(6)). Plaintiff has not had the benefit of the discovery process to more fully develop the facts and circumstances surrounding the acts and omissions of Larocque and Owens. In accordance with Haley, Defendants' 12(b)(6) motion should be denied.

D. Larocque Owed Plaintiff A Special Duty

Even if the actions of Larocque were not egregious, it would likely be held that he owed Plaintiff a special duty; this, because his contacts with the venue made the identity of likely victims apparent.

The Rhode Island Supreme Court recognized in Quality Court Condominium Ass'n v. Quality Hill Development Corp., 641 A.2d 746 (R.I. 1994) that a special duty can arise where an inspector has repeated contacts with a given property such that its owners and users are reasonably ascertainable to him. Similarly, in Boland v. Town of Tiverton, 670 A.2d 1245 (R.I. 1996), a question of fact arose as to whether a special duty was owed where town inspectors had prior contacts with a building's owners. Here, as in Quality Court and Boland, inspector Larocque had repeated (at least three) contacts with the subject real estate and its owners, allowing him to ascertain the owners and likely victims. On these facts it may well be found, following discovery, that Larocque owed Plaintiff a special duty as that term has been defined in Rhode Island caselaw.

IV. DEFENDANT OWENS IS NOT PROTECTED BY § 23-28.2-17 BECAUSE GOOD FAITH IS A QUESTION OF FACT

A. § 23-28.2-17 Requires That Inspections Be Done In Good Faith

R.I. Gen. Laws § 23-28.2-17, relied upon by Defendants for immunity, is not without preconditions. It provides in pertinent part,

> ... [A]ny fire marshal, acting in good faith **and** without malice, shall be free from liability for acts performed under any of its provisions or by reason of any act or omission in the performance of his or her official duties in connection therewith.

(emphasis added). Defendants' Memorandum merely addresses the issue of malice and concludes that Plaintiff's Complaint has not raised an issue of malice. Defendants' Memo, p. 17. Plaintiff acknowledges that Owens may not have acted with malice. However, R.I. Gen. Laws § 23-28.2-17 mandates a two-

step analysis (i.e. good faith and without malice) prior to any grant of immunity. Therefore, the factual issue of whether Owens acted in good faith must be resolved prior to any grant of immunity.

As indicated, supra, Plaintiff alleges th4t Owens was egregiously negligent, which description connotes a lack of good faith. Plaintiff alleges that Owens failed to properly train and supervise personnel responsible to enforce the R.I. Fire Safety Code, failed to enforce capacity limits and exit requirements at The Station and failed to order remedied highly flammable egg crate material. Plaintiff alleges that Owens lacked the good faith condition prerequisite set forth in R.I. Gen. Laws § 23-28.2-17. At the very least, it is a question of fact whether Owens was acting in good faith and, therefore, Defendants' Fed.R.Civ.P. 12(b)(6) Motion should be denied.

B. The Actions Of Owens Did Not Amount To Good Faith

Black's Law Dictionary defines good faith as "... being faithful to one's duty or obligation." Black's Law Dictionary 744 (6th ed. 1991). The issue of "good faith" as it applies to R.I. Gen. Laws § 23-28.2-20 was ruled upon by the Rhode Island Supreme Court in Vaill v. Franklin, 722 A.2d 793 (R.I. 1999). In Vaill, a fire chief instructed four of his officers to deny access into or out of a store while he went inside and conducted a general fire safety inspection. 722 A.2d at 794. Following the inspection, plaintiffs commenced an action alleging that the fire chief had conducted an unreasonable search and seizure in violation of their constitutional rights. 722 A.2d at 794. The fire chief's motion for summary judgment was granted based upon R.I. Gen. Laws § 23-28.2-20. The Rhode Island Supreme Court reversed the Superior Court ruling that "whether Franklin is shielded from liability based upon qualified immunity is dependent on whether the inspection itself was reasonable under the circumstances in this case." 722 A.2d at 795. (emphasis added). Next, the Rhode Island Supreme Court ruled that questions of material fact

remained:

> However, questions of material fact remain as to whether consent had been given and the search was reasonable, or whether an emergency situation existed which necessitated a warrantless inspection. Consequently, summary judgment was improper as to Fire Chief Franklin.

722 A.2d at 796. (emphasis added). Of course, the parties in Vaill had the benefit of discovery, unlike the Plaintiff in the case at bar.

Without any discovery, Plaintiff knows that Larocque inspected The Station on at least three separate occasions prior to February 20, 2003 and that Larocque's inspection reports repeatedly mention the same (uncorrected) hazards while failing to identify other serious violations of the Fire Code. In addition, Larocque increased the maximum capacity of The Station in March of 2000 by classifying the entire premises as "standing room" contrary to a report he prepared only three months earlier. However, it was Owens statutory obligation to conduct and supervise fire safety inspections. Serious questions of fact exist regarding whether Owens properly trained and supervised Larocque. These facts alone, without any discovery, strongly suggest a lack of good faith fulfillment of statutory obligations by Owens.

C. The State Has Improperly Sought Its Dismissal Under § 23-28.2-17

1. The State Is Not Included In The Class Of Individuals Provided Immunity

In claiming the benefits of § 23-28.2-17 the State misleadingly quotes only part of the statute. That part of the statute omitted from Defendants' quotation specifically provides "[t]he state fire marshal, his or her deputies, . . . shall not render themselves liable personally, and they are hereby relieved from all personal liability for any damage that may accrue ..." R.I. Gen. Laws § 23-28.2-17.

Immunity statutes, such as R.I. Gen. Laws § 23-28.2-17 must be strictly construed. Potter V. Charles v. Finch & Sons, 76 N.J. 499, 502, 388 A.2d 614 (1978) ("[I]mmunity from tort liability is not favored in the law since it bars the injured person from the recovery of compensatory damages against the party who is otherwise responsible for the injury. For that reason, [immunity] statutes . . . must be strictly construed beyond their plain meaning." (citations omitted); Yen v. Avovelles Parish Police Jury, 858 S.2d 786, 789 (La.App.3 Cir. 2003) ("A statute that grants immunities or advantages to a special class in derogation of general rights available to tort victims must be strictly construed against limiting the tort claimants' rights against the wrongdoer."). Because R.I.G.L. 23-28.2-17 explicits limits its grant of immunity to *personal liability* of the fire marshal (under specific circumstances not satisfied here — see discussion, supra), strict construction of this statute dictates that its immunity not be extended to insulate the State.

2. R.I. Gen. Laws § 23-28.2-17 Is Analogous To The Building Inspector Immunity Statute

The State argues that Owens must be afforded immunity pursuant to R.I. Gen. Laws § 23-28.2-17, Defendants' Memo, p. 17, under the doctrine of *respondeat superior*. Id. Although the Rhode Island Supreme Court has not decided this specific issue, it has implicitly rejected this argument by its holdings in analogous building inspector cases. First, R.I. Gen. Laws § 23-28.2-17 and § 23-27.3-107.9, which provide immunity to fire inspectors and building inspectors, respectively, are identical in pertinent part:

> **23-28.2-17. Relief from responsibility.** -- The state fire marshal, his or her deputies, and assistants, charged with the enforcement of the Fire Safety Code, chapters 28.1 through 28.39 of this title, shall not render themselves liable personally, they are hereby relieved from all personal liability for any damage that may accrue to persons or property

> as a result of any act required or permitted in the discharge of their official duties. Any suit instituted against any officer or employee because of an act performed by him or her in the lawful discharge of his or her duties, and under the provisions of the Fire Safety Code, shall be defended by the legal representative of the state until the final termination of the proceedings. In no case shall the fire marshal, his or her deputies, or assistants, be liable for costs in any action, suit, or proceedings that may be instituted in pursuance of the provisions of the Fire Safety Code, and any fire marshal, acting in good faith and without malice, shall be free from liability for acts performed under any of its provisions or by reason of any act or omission in the performance of his or her official duties in connection therewith.

(emphasis added).

> **23-27.3-107.9. Relief from personal responsibility.** -- The state building commissioner, the members and staff of the building code standards committee and the board of standards and appeals, the building official, officer, or employee charged with the enforcement, administration and/or review of this code, while acting for the state or a municipality, shall not thereby render himself or herself liable personally, and he or she is hereby relieved from all personal liability for any damages that may accrue to persons or property as a result of any act required or permitted in the discharge of his or her official duties. Any suit instituted against any of these officers or employees because of an act performed by him or her in the lawful discharge of his or her duties and under the provisions of this code shall be defended by the legal representative of the state in the case of all members and staff of the building code standards committee and the board of standards and appeals, and the building commissioner or his or her agents or by the legal representative of the municipality, in the case of the building official, officer, or employee, until the final determination of the proceedings. In no case shall members and staff of the building code standards committee and the board of standards and appeals, the state building commissioner, building official, or any of their subordinates be liable for costs or damages in any action, suit, or proceeding that may be instituted pursuant to the provisions of this code and the members and staff of the building code standards committee and the board of standards and appeals, the state building commissioner or his or her agents or an officer of the department of building inspection, acting in good faith and without malice and within the scope of their employment, is free from liability for acts performed under any of its provisions or by reason of any act or omission in the performance of his or her official duties in connection with this code.

(emphasis added).

In Haworth v. Lannon, 813 A.2d 62 (R.I. 2003), plaintiff alleged that the town, through its building inspector, was negligent in failing to properly inspect homes. Id. at 64. The Rhode Island Supreme Court specifically ruled that if either exception to the public duty doctrine were applicable, "the town would be liable for the tortious acts of its agent, the building inspector." Id. at 64. (emphasis added). Although there is no reference to R.I. Gen. Laws § 23-27.3-107.9, Haworth stands for the position that a town will be liable for the tortious acts of its inspector despite an immunity statute which provides that the inspector will not be "liable personally." This implicit ruling is also contained other building inspection cases including Quality Court Condominium Ass'n v. Quality Hill Development Corp., 641 A.2d 746 (R.I. 1994), Boland v. Town of Tiverton, 670 A.2d 1245 (R.I. 1996) and Torres v. Damicis, 853 A.2d 1233 (R.I. 2004). Therefore, even if Owens and Larocque are somehow afforded immunity under R.I. Gen. Laws § 23-28.2-17, the State remains liable for their negligence.

## V. THERE IS NO QUASI-JUDICIAL IMMUNITY FOR MINISTERIAL INSPECTION FUNCTIONS

Owens is not entitled to quasi-judicial immunity because his responsibilities to strictly enforce the quantifiable provisions of the Fire Code were ministerial. He did not hold hearings or weigh evidence, nor did he exercise discretion of a judicial nature in his capacity as state fire marshal. Therefore, Defendants' reliance upon this doctrine is misplaced.

### A. Defendants' Reliance On Rhode Island Administrative Agency Cases Is Misplaced

In Suitor v. Nugent, 98 R.I. 56, 199 A.2d 722 (1964), the Rhode Island Supreme Court afforded quasi-judicial immunity to the Attorney General where he exercised prosecutorial discretion. Id. at 58, 723. The court ruled, "[I]t is clear . . . that the Attorney General, in acting to enforce the criminal law,

performs acts which require an exercise of judgment or discretion and are in the nature of judicial acts and that, when so acting, he acts as a quasi-judicial officer." 98 R.I. at 61, 199 A.2d at 724. In that case the Rhode Island Supreme Court adopted the definition of "quasi-judicial immunity" set forth in State v. Winne, 21 N.J.Super. 180, 91 A.2d 65, which defined that doctrine as "... the action and discretion of public administrative officers, who are required to investigate facts, or ascertain the existence of facts, and draw conclusions from them, as a basis for their official action, and to exercise discretion of a judicial nature." Suitor, 98 R.I. at 61, 199 A.2d at 724.

Following its decision in Suitor, the Rhode Island Supreme Court extended quasi-judicial immunity to the Department of Environmental Management in Mall at Coventry Joint Venture v. McLeod, 721 A.2d 865 (R.I. 1998), and to the Rhode Island Disability Determination Service in Psilopoulos v. State of Rhode Island, 636 A.2d 727 (R.I. 1994). In Mall at Coventry Joint Venture, the Rhode Island Supreme Court held that quasi-judicial immunity "... is available in respect to any decision issued by DEM ..." 721 A.2d at 869.[5] In Psilopoulos, Social Security benefits were denied by federal authorities on the basis of recommendations of physicians employed by the State of Rhode Island and upon recommendations of state administrators. 636 A.2d at 727.

Owen's actions and the division of state fire marshal are clearly distinguishable from the actions and agencies involved in Psilopoulos and Mall at Coventry Joint Venture. Contrary to **Psilopoulos,** Owens did not make judgment decisions based on (medical) recommendations of others. Contrary to Mall

[5] In Mall at Coventry Joint Venture, a trial justice entered judgment as a matter of law to the defendants by determining that the plaintiff failed to establish reasonable reliance on DEM's actions and that the plaintiff failed to complete its formal application. 721 A.2d at 868. However, the Rhode Island Supreme Court ruled, "Although the trial justice did not rely on the doctrine of quasi-judicial immunity in granting the judgment as a matter of law, we are of the opinion that this doctrine would have been an appropriate rationale for his decision. We often have stated that this court may affirm a justice of the Superior Court on grounds other than those which he or she has utilized in determining the outcome of the case." 721 A.2d at 869.

at Coventry Joint Venture, where DEM, an administrative agency, concluded that a proposal represented a significant alteration of fresh water wetlands and, therefore, requested a formal application from plaintiffs, Owens did not have such discretion. He was responsible to ensure that the quantifiable provisions of the Fire Code were strictly enforced.

B. Ministerial Functions Are Not Immune From Liability, While Discretionary Ones Are

The acts performed by Owens were ministerial in nature and as a result he is not entitled to quasi-judicial immunity. He was obligated to strictly enforce the quantifiable provisions of the Fire Code without regard to his own opinions. Ministerial acts have been defined as follows:

> A ministerial act is one which a public officer is required to perform upon a given state of facts in a prescribed manner, in obedience to the mandate of legal authority and without regard to his own judgment or opinion .. .

State v. Winne, 21 N.J.Super. at 74, 91 A.2d at 199.[6] The R.I. Fire Safety Code § 1-4.1 specifically states "[t]he State Fire Marshal is the sole authority having jurisdiction for the strict enforcement of the provisions of this Code. The State Fire Marshal shall have authority to appoint and certify as many deputy state fire marshals and assistant deputy state fire marshals as are deemed necessary to strictly enforce the provisions of this Code." (emphasis added). Importantly, § 1-4.1 goes on to indicate that discretion lies only with the Fire Safety Code Board of Appeal and Review:

> ... the Fire Safety Code Board of Appeal and Review is the sole authority having jurisdiction to grant variances waivers modifications and amendments from or to review and accept any proposed fire safety equivalencies and alternatives to, the strict adherence to the provisions of this Code .. .
>
> R.I. Fire Safety Code, § 1-4.1. (emphasis added).

The R.I. Fire Safety Code is so precise that no discretion exists in identifying violations as evidenced by the following representative statutes:

[6] In Winne, it was held that a prosecuting attorney was entitled to quasi-judicial immunity where it was alleged that he was malfeasant in failing to suppress illegal gambling. 21 N.J.Super. at 77, 91 A.2d at 205.

**R.I. Gen. Laws** § **23-28.6-3.** Maximum occupancy. - The occupant load . . . shall be determined by dividing the net floor area or space by the square feet per occupant

**R.I. Gen. Laws** § **23-28.6-4.** Standing conditions. – (a) Standing patrons may be allowed in places of assembly at the rate of one person for each five square feet (5 sq. ft.) of area available for standing .. .

**R.I. Gen. Laws** § **23-28.6-5.** Admissions restricted and supervised. – (b) The maximum occupancy of all areas shall be conspicuously posted by means of a sign .. .

**R.I. Gen. Laws** § **23-28.6-7.** Egress passageways. – (a) The distance of travel from any point within the place of assembly to an approved egress opening therefrom shall not exceed one hundred-fifty feet (150') in nonsprinklered buildings . . . (c) All new doorways and connecting passageways to the outside, to be considered as means of egress, shall be at least thirty-six inches (36") in width and at least seventy-eight inches (78") in height, . . . All existing doorways and connecting passageways to the outside to be considered as means of egress, shall be at least thirty-two inches (32") in width and at least seventy-four inches (74") in height.

R.I. Fire Safety Code § 1-4.4. Sections 1-4.5 and 1-4.14 provide the Chairman of the Board (not Owens) with final authority to exercise judgment to summarily abate conditions which are in violation of the R.I. Fire Safety Code or to order the immediate evacuation of a premises deemed unsafe because of R.I. Fire Safety Code violations.

In support of its argument that Owens position required the exercise of quasi-judicial discretion, Defendants' Memorandum points out that that § 1-4.4 of the R.I. Fire Safety Code states the "State Fire Marshal may order any person(s) to remove or remedy such dangerous or hazardous condition or material." Defendants' Memo, p. 19. (emphasis added). The word "may" must be taken in the context provided by R.I. Fire Code §1-4.1 which calls for the "strict enforcement" of the Code. It is clear that when Owens, or his deputy state fire marshals, were confronted with circumstances that constituted a violation of the Code, they were *required* to order the violation remedied. As stated in Black's Law Dictionary, "...courts not infrequently construe `may' as 'shall' or `must' to the end that justice may not be ,the slave of grammar." Black's Law Dictionary 676 (6th ed. 1991).

The Office of State Fire Marshal is akin to a police department responsible for identifying violations of the Fire Code. The distinction between prosecutors entitled to quasi-judicial immunity and a county building inspector who was not entitled to quasi-judicial immunity was explained in Andrews v. Ring, 266 Va. 311, 585 S.E.2d 780 (2003). In Andrews, a building inspector, upon the advice of a prosecutor, filed a criminal complaint against three individuals alleging violations of the building code. Andrews, 266 Va. at 317, 585 S.E.2d at 783. Subsequently, actions were filed by the three individuals against the prosecutor and the building official. 266 Va. at 317, 585 S.E.2d at 783. First, the court held

that the prosecutor was entitled to quasi-judicial immunity:

> In each case where a prosecutor is involved in the charging process, under Virginia law, that action is intimately connected with the prosecutor's role in judicial proceedings and the prosecutor is entitled to absolute immunity from suit .. .

266 Va. at 321, 585 S.E.2d at 785. In sharp contrast, the same court in the same matter held that the building official was not entitled to quasi-judicial immunity:

> We conclude that Ring's duties as a building inspector are more akin to those of a police officer in the enforcement of laws, rules and regulations, than a prosecutor in the judicial process. As a matter of law, Ring is not entitled to the absolute immunity afforded by quasi-judicial immunity.

266 Va. at 325, 585 S.E.2d at 788. (emphasis added).

In Bolden v. City of Covington, 803 S.W.2d 577, 579 (Ky. 1991), relied upon by Defendants, a City Director of Housing Development was cloaked with quasi-judicial immunity. The authority of the City Director of Housing Development in Bolden is distinguishable from Owens' authority and more akin to the authority vested with the Rhode Island chairman of the fire safety code board of appeal and review (R.I. Gen. Laws § 23-28.3-2). For instance, in Bolden, the City Director of Housing Development had authority to determine if a building was unfit for habitation or an immediate threat to the safety of persons and if so, to "cause the building to be closed." These acts of discretion are vested with the chairman of the Rhode Island fire safety code board of appeal and review:

> The State Fire Marshal, with the approval of the Chairman of the Board.. . shall have the authority to summarily abate any condition which is in violation of any provision of the state Fire Safety Code and which presents immediate danger to life.

R.I. Fire Safety Code § 1-4.5. (emphasis added).

> The State Fire Marshal, with the approval of the Chairman of the Board.. . shall have the authority to order the immediate evacuation of any occupied building deemed unsafe when such building has hazardous conditions that present imminent danger to the building occupants.

R.I. Fire Safety Code § 1-4.14. (emphasis added). The discretion afforded to the City Director of Housing Development in Bolden is comparable to the discretion afforded to the Rhode Island chairman of the fire safety code board of appeal and review and not Owens.

The distinction between quasi-judicial acts (which are entitled to absolute immunity) and investigatory acts (which are not entitled to absolute immunity) is further demonstrated by cases where *prosecutors* were not afforded absolute immunity. One example is the United States Supreme Court case of Buckley v. Fitzsimmons, 509 U.S. 259, 113 S.Ct. 2606 (1993), which held that a prosecutor was not entitled to absolute immunity when performing investigative functions:

> ... so when a prosecutor functions as an administrator rather than as an officer of the court, he is entitled only to qualified immunity. There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand. When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.

Id. at 273, 2616. (internal citations and quotes omitted) (emphasis added).

In conclusion, even a prosecutor may not be entitled to absolute quasi-judicial immunity when he or she performs acts that are investigative or ministerial in nature. Owens did not hold hearings, weigh evidence, draw conclusions from the evidence in hearings, or exercise discretion of a judicial nature. His

acts were not quasi-judicial but were ministerial in nature because he was under a statutory duty to "strictly enforce" the quantifiable provisions of the Fire Code. Therefore, Owens is not entitled to quasi-judicial immunity.

C. The Rhode Island Building Inspection Cases Implicitly Fall Outside The Quasi-Judicial Realm

Building inspectors and fire marshals perform very similar functions. As explained, infra, several cases in Rhode Island have held that municipalities will be liable for the egregious negligence of local building inspectors. Implicit in those cases is that building inspectors are not entitled to quasi-judicial immunity; therefore, Owens does not enjoy this protection. Although Mall at Coventry Joint Venture was decided on different grounds by a superior court justice, the Rhode Island Supreme Court did not hesitate to rely on quasi-judicial immunity, sua sponte, to deny liability. As stated by that court, "We often have stated that this court may affirm a justice of the superior court on grounds other than those which he or she has utilized in determining the outcome of the case." Mall at Coventry Joint Venture, 721 A.2d at 869. Because this doctrine was not raised once by the Rhode Island Supreme Court in the cases of Quality Court Condominium Assn., Boland, Haworth, or Torres, supra, that court has implicitly held that local building inspectors are not entitled to quasi-judicial immunity. A state fire marshal should be treated no differently.

D. Even If The Fire Marshal Had Some Discretionary Functions, As To Which He Is Immune, Such Immunity Would Not Apply To His Ministerial Or Mandatory Duties

It is clear from Buckley, supra, that prosecutors' absolute immunity or lack thereof will turn on the specific activity in question. 509 U.S. 273, 113 S.Ct. 2616. In fact, in the same matter, a prosecutor may be afforded absolute immunity for some activities while being afforded only qualified immunity for other

activities. In the case at bar, while Defendants may cite some discretionary functions of the state fire marshal, obviously to properly train and supervise and strictly enforce the Fire Code is not discretionary. If Owens breached the latter, Defendants are liable. This presents an issue of fact that cannot be determined based upon the pleadings. Therefore, Defendants should not be afforded quasi-judicial immunity at this time.

VI. RHODE ISLAND LAW RECOGNIZES A CAUSE OF ACTION ARISING FROM NEGLIGENTLY PERFORMED GOVERNMENTAL BUILDING INSPECTIONS

In Rhode Island, the State and/or local municipalities will be held liable for the negligent performance of a building inspection if the conduct of the local official is egregious. It may be true that no duty to enforce fire and building codes existed at common law. However, Rhode Island precedent and the common law recognize a duty to act carefully <u>after</u> the assumption of an activity such as the inspection of a building or the undertaking to supervise and train deputy state fire marshals and assistant deputy state fire marshals. This is the specific duty that Plaintiff alleges Defendants breached. The duty to act carefully *after* affirmative conduct is distinguishable from cases where no attempt to enforce municipal regulations has occurred.

A. <u>Rhode Island Case Law Evidences A Public Policy Favoring Municipal Liability For Negligently Performed Building Inspections</u>

1. The Rhode Island Supreme Court Has Imposed Liability On Municipalities For Negligent Building Inspections

The negligent performance of a building inspection has been held to be actionable in Rhode Island. For example, in <u>Quality Court Condominium Ass'n v. Quality Hill Development Corp.</u>, 641 A.2d 746 (R.I. 1994), plaintiffs alleged that a local building inspector failed to properly inspect condominiums and

approved construction work which violated the building code. Id. at 747-748. The city argued that it could not be held liable for defective construction because its "... permits and the inspections are not insurance policies wherein the municipality guarantees that each building is in compliance with the code." 641 A.2d at 750. However, the Rhode Island Supreme Court disagreed by ruling that the city would be liable if plaintiffs were able to prove: (1) that a special duty was owed to the plaintiffs, or (2) that the city's conduct was egregious. 641 A.2d at 750.[7]

Two years later, the Rhode Island Supreme Court again ruled that a building inspector could be held liable for the negligent performance of his duties. In Boland v. Tiverton, 670 A.2d 1245 (R.I. 1996), the town building inspector issued a certificate of occupancy despite the fact that the house construction was incomplete and building code violations existed when he inspected the premises. Id. at 1246. Subsequently, plaintiffs filed suit against the Town of Tiverton alleging "negligent performance of the building inspections by the Town's building inspector." 670 A.2d at 1247. The Rhode Island Supreme Court vacated the order which granted summary judgment to the Town of Tiverton holding, "[T]his court notes that the record before us contains sufficient facts that, if more fully developed at trial, as in Quality Court, it could probably support a finding of either a special duty owed to the Bolands or egregious conduct by the Town." 670 A.2d at 1249. The court explained that an action can be founded upon a building inspector's negligence:

> We understand that, when making her decision in this case, the trial justice did not have available to her the benefit of Quality Court, supra, and its discussion of the relationship between the enforcement of the building code and the liability of municipalities for the negligence of its building inspectors.

[7] The Rhode Island Supreme Court found it unnecessary to analyze the facts of this case under the egregious conduct exception to the public duty doctrine because it first found that a special duty existed. Quality Court Condominium Assn., 641 A.2d at 751.

670 A.2d at 1249. (emphasis added). More recently, the Rhode Island Supreme Court has continued to analyze negligent building inspection cases under the special duty and egregious conduct exceptions to the public duty doctrine. For instance, in Haworth v. Lannon, 813 A.2d 62 (R.I. 2003), plaintiff's allegations were analyzed under the egregious conduct exception:

> ... plaintiffs have not presented any evidence that the Town, before its issuance of the certificate of occupancy, was so negligent that its inspection amounted to egregious conduct or created a situation of extreme peril that it then disregarded.

813 A.2d at 65-66. (emphasis added). Similarly, in Torres v. Damicis, 853 A.2d 1233 (R.I. 2004), the Rhode Island Supreme Court ruled that plaintiff's claims against a town building inspector could go forward if he could "... prove that his circumstances qualify under one of the exceptions to the publicduty doctrine . . ." Id. at 1239.[8] Clearly, Haworth and Torres would not have reached the issue of whether the municipality acted in an egregious manner if an actionable duty did not exist. The distinction between a statutory duty to take action and the common law duty to exercise care after the voluntary assumption of a duty was succinctly stated by the Alaska Supreme Court:

> We do not reach the issue of whether the State had a statutory duty to take action concerning hazards discovered at the Gold Rush, because we find that the State assumed a common law duty by its affirmative conduct. It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully.. .

Adams, 555 P.2d at 240. (emphasis added). In Adams, fire inspectors found several violations at the Gold Rush Hotel which constituted extreme life hazards; however, no further action was taken and a fire killed

---

[8] In both Haworth and Torres, the plaintiffs appealed from grants of summary judgment where no issue of material fact existed as to whether the special duty or egregious conduct exceptions to the public duty doctrine applied. Haworth, 813 A.2d at 63; Torres, 853 A.2d at 1253. Importantly, both cases had the benefit of discovery, unlike the case at bar.

five individuals and injured several others. 555 P.2d at 239-240.

In conclusion, Rhode Island recognizes an actionable duty when building inspections are negligently performed. Only the public duty doctrine may afford protection from negligent performance of building inspections. Building inspectors and state fire marshals have similar mandates and almost identical functions. Therefore, it would be illogical to make a distinction between negligence actions against building inspectors (alleging egregious conduct), which are clearly allowed in Rhode Island, and negligence actions against the state fire marshal (also alleging egregious conduct).

2. Defendants' Reliance Upon Failure-To-Enforce Cases Is Misplaced

Defendants mistakenly rely upon cases which have held that a state's/municipality's omission in enforcing regulations does not give rise to a cause of action. Plaintiff acknowledges that where no attempt at formulating, coordinating and implementing training programs related to fire inspections, and no attempt at enforcement occurs, an actionable duty may not readily arise.

In Grogan v. Commonwealth of Kentucky, 577 S.W.2d 4 (Ky. 1979), an action followed a fire at the Beverly Hills Supper Club ,which resulted in a number of deaths and personal injuries. Id. at 4. The Kentucky Supreme Court ruled that the government would not be liable when it does not attempt to enforce laws instituted for public protection:

> The answer ... is that a government ought to be free to enact laws for the public protection without thereby exposing its supporting taxpayers (including, of course, those yet unborn) to liability for failures of omission in its attempt to enforce them. It is better to have such laws, even haphazardly enforced, than not to have them at all.

577 S.W.2d at 5. (emphasis added). In Grogan, it is clear that the court was ruling on a government's failure to enforce its regulations as opposed to being egregiously negligent during the performance of an

inspection.

Defendants also rely upon Vermont caselaw in support of their position that no common law right of action exists for a municipality's failure to enforce an ordinance. In Corbin v. Buchanan, 163 Vt. 141, 657 A.2d 170 (1995), a third floor apartment, which did not have smoke detectors, caught fire and killed a young boy. Id. at 143, 171. In Corbin, the town defendant "... did not conduct regular inspections of existing buildings, but enforced the codes in response to complaints ..." 163 Vt. at 143, 657 A.2d at 171-172. Despite the fact that a town employee inspected (a different) first floor apartment of the building in question and observed a missing smoke detector in that unit, "... no complaints were received from other tenants, and no inspection of other apartments in the building was ever conducted." 163 Vt. at 143, 657 A.2d at 172.

(emphasis added). In Corbin, the Vermont Supreme Court reversed a jury verdict in favor of plaintiffs by holding that no action exists against the municipality for its failure to enforce an ordinance. 163 Vt. at 143, 657 A.2d at 171-172. By contrast to Grogan and Corbin, Larocque inspected The Station on at least three occasions prior to Plaintiff's injuries and Owens undoubtedly formulated, coordinated and implemented education and training programs relating to fire inspections pursuant to the statutory mandate set forth in R.I. Gen. Laws § 23-28.2-6. In addition, R.I. Gen. Laws § 23-28.2-4 charges Owens with the responsibility to conduct and supervise fire safety inspections.

Defendants attempt to further their argument that Plaintiff's action is not statutorily supported by comparing the R.I. Fire Safety Code to other Rhode Island statutes that do not contain provisions permitting civil liability. Again, Defendants misunderstand the basis of Plaintiff's negligence action. For instance in Accent Store Design, Inc. v. Marathon House, 674 A.2d 1223 (RI. 1996), an action was filed

against a state agency alleging negligence in failing to comply with the Rhode Island public works bonding statute (R.I. Gen. Laws § 37-13-14). (In Accent Store Design, Inc., the agency failed to require a contractor to obtain a statutorily mandated bond. 674 A.2d at 1225.) In Accent Store Design, Inc., the Rhode Island Supreme Court ruled that the absence of a remedy in a statutory scheme is evidence that the General Assembly did not intend to create a tort subjecting the government to liability. Accent Store Design, Inc., 674 A.2d at 1226.

However, Defendants had a common law duty to exercise reasonable care after undertaking to formulate, coordinate and implement fire inspection programs, and undertaking the specific inspections which occurred at The Station, as recognized in Quality Court Condominium Assn., Boland, Haworth, and Torres. Plaintiff does not allege their cause of action arises directly from the Fire Code. Therefore, Grogan, Corbin and Accent Store Design, Inc. are not controlling. The Fire Code merely serves as evidence of the proper standard of care in this matter.

3. Defendants' Reliance Upon Kentucky and Vermont Cases Is Misplaced

As discussed supra, Defendants' reliance upon case law of Kentucky and Vermont is misplaced because the cases cited relate to the complete failure to enforce regulations as opposed to the affirmative act of a negligent inspection. However, a further review of the cases cited by Defendants reveals tort schemes quite different from Rhode Island's. For instance, in Commonwealth of Kentucky v. Brown, 605 S.W.2d 497 (Ky. 1980), the Kentucky Supreme Court distinguished the Kentucky Tort Claims Act from the Federal Tort Claims Act and the Florida Tort Claims Act (both similar to Rhode Island's Tort Claims Act) by stating, "Both of these statutes, by express terms, provide that the government is to be treated as if it were a private individual. Our statute mandates no such treatment of the Commonwealth." Id. at 498.

Of course, both the Federal Tort Claims Act and the Rhode Island Tort Claims Act indicate that the government shall be liable in the same manner as a private individual. 28 U.S.C. § 2674, R.I. Gen. Laws § 9-31-1. The case of Corbin v. Buchanan, 163 Vt. 141, 657 A.2d 170 (1995) is also distinguishable in that the Supreme Court of Vermont upheld a town's ordinance which expressly prohibited a private cause of action against the town. Of course, Defendants here have not and, indeed, cannot assert that any local ordinance expressly prohibits Plaintiff's action.

## VII. THE USE OF PYROTECHNICS WAS NOT SO UNFORESEEABLE AS TO RENDER IT AN "INTERVENING SUPERSEDING CAUSE"

Defendants have argued that their actions were not "the proximate cause" of the injuries sustained by Plaintiffs. In addition, Defendants argue that the illegal actions of other defendants (i.e. the failure to obtain a permit to possess and display pyrotechnics and a failure to obtain a certificate of competency to possess or display pyrotechnics) superseded any negligence by these Defendants. However, Defendants' reliance upon Rhode Island case law completely ignores cases upholding concurrent proximate causes of injuries. The State Defendants correctly cite 65 C.J.S. Negligence 111 d., which states, "...[i]f no danger existed in the condition except because of the independent cause, such condition was not the proximate cause . . ." However, Plaintiff specifically maintains that Owens and Larocque's affirmative acts created a dangerous condition prior to the actual fire and was a proximate cause of this tragedy.

The determination of proximate causation and the existence of any superseding cause is a question of fact. Spendorio v. Bilray Demolition Co.. Inc., 682 A.2d 461, 467 (R.I. 1996). Proximate cause is proven by showing that ". . . but for the negligence of the tortfeasor, injury to the plaintiff would not have occurred." Martinelli v. Hopkins, 787 A.2d 1158, 1169 (R.I. 2001). Circumstantial evidence can be

sufficient to prove proximate causation. Martinelli, 787 A.2d at 1169. In addition, if two individuals' acts cause one injury, both individuals are liable:

> It should be noted that the plaintiff was not required to prove that the town's negligence was *the* proximate cause for his injuries and damages, but only that it was a proximate cause which, standing alone, or in combination with any other defendant's negligence, contributed to the plaintiff's injuries.

Martinelli, 787 A.2d at 1170. (emphasis added by court).

A. It Was Reasonably Foreseeable That Fire Safety Code Violations And Overcrowding Would Result In Harm

As is true with the issue of legal duty, a key determinant on the issue of superseding causation is foreseeability; that is, was it or should it have been reasonably foreseeable to Owens and Larocque that their alleged negligent conduct could be expected to lead to harm?[9] This court has noted that:

> Determinations of foreseeability, and specifically of whether a Plaintiff's injury was proximately caused by a Defendant's negligent acts, or instead by the intervening act of a responsible third person, are ordinarily issues of fact, and are therefore usually not determined by summary judgment.

Travelers Insurance Co. v. Priority Business Forms, Inc., 11 F.Supp.2d 194, 199 (D.R.I. 1998). One very instructive judicial effort to define foreseeability is found in Bigbee v. Pacific Telephone and Telegraph Company, 192 Cal.Rptr. 857, 665 P.2d 947 (1983). The plaintiff therein was seriously injured when the telephone booth in which he was standing was struck by a motorist whose car left the roadway. The booth was located in close proximity to a major thoroughfare. When he saw the motorist approaching, the plaintiff attempted to exit the telephone booth but the door jammed. The plaintiff brought suit against several parties including the companies that designed, located, installed and maintained the telephone

[9] If the independent or intervening cause is reasonably foreseeable, the causal connection remains unbroken. S.M.S. Sales Co., Inc. v. New England Motor Freight, Inc., 115 R.I. 43, 47, 340 A.2d 125, 127 (1975), citing Aldcroft v. Fidelity & Gas Co., 106 R.I. 311, 259 A.2d 408 (1969); and Denisewich v. Pappas, 97 R.I. 432, 198 A.2d 144 (1964).

booth, asserting that it was negligently designed. He asserted that if the door had operated freely, he would have escaped injury; also, that the booth was situated too close to a road where drivers often speeded, thereby "creating an unreasonable risk of harm to anyone who used the telephone booth." 192 Cal.Rptr. 857, 858, 34 Ca.3d 49, 53, 665 P.2d 947, 948 (1983). The defendants argued that they had no duty to protect anyone who used the telephone booth from cars colliding with it, as the risk was unforeseeable. They also claimed the negligence of the driver was a superseding cause of the plaintiff's injuries.

When addressing the ultimate issue in the case, that is, whether there was "room for a reasonable difference of opinion" as to the foreseeability of the risk a car might hit the telephone booth and injure the plaintiff, the Biabee court first laid out its definition of foreseeability:

> It is well to remember that foreseeability is not to be measured by what is more probable than not, but includes whatever is likely enough in the setting of modern life that a reasonably thoughtful [person] would take account of it in guiding practical conduct.

Id. at 862, 57 and 952, citing 2 Harper & James, Law of Torts, (1956), § 18.2, at p. 1020.

One may be held accountable for creating even "the risk of a slight possibility of injury if a reasonably prudent [person] would not do so." Id. citing Ewart v. Southern Cal Gas Co., 237 Cal.App.2d 163, 172, 46 Cal.Rptr. 631 (1965), quoting from Vasquez v. Alameda, 49 Cal.2d 674, 684, 321 P.2d 1 (dis. opn. of Traynor, J.) [emphasis added]. Finally, the court went on to say that "what is required to be foreseeable is the general character of the event or harm . . . not its precise nature or manner of occurrence." Id. See also Hueston v. Narragansett Tennis Club, Inc., 502 A.2d 827 (R.I. 1986).

In Martinelli, supra, the Rhode Island Supreme Court found that the Town of Burrillville's negligent issuance of a license, coupled with the later failure to control an event (through its police officers) was a proximate cause of injuries sustained by the plaintiff. 787 A.2d at 1170. In Martinelli, several intoxicated

event attendees attempting to urinate in the woods by breaching a portion of a snow fence that was fastened to a rotted tree. 787 A.2d at 1170. In doing so, the rotted tree, to which the fence was attached, fell and injured the plaintiff. 787 A.2d 1170.

The failure to identify and/or order the remediation of violations of the Fire Code and the failure to adequately formulate, coordinate and implement proper fire inspection training were substantial causes of the injuries and deaths that resulted on February 20, 2003. The risk of fire in a nightclub, and elsewhere, can come in many forms, only one of which includes the use of a pyrotechnic display by a rock and roll band.[10] In no way was the harm here of a kind and degree so far beyond the risk foreseeable to the state fire marshal and deputy state fire marshal that it would be unfair to hold the State Defendants responsible.

B. Plaintiff Does Not Allege That The Fire Was Intentionally Ignited

Defendants place significant reliance upon Travelers Insurance Co. v. Priority Business Forms, Inc., 11 F.Supp. 2d 194 (D.R.I. 1998), which ruled "the commission of arson by a third party is not the natural and probable result of discontinuing a burglar alarm system and failing to notify the landlord thereof." Id. at 200. (emphasis added by court). The facts of Plaintiff's allegations are readily distinguishable from the facts of Travelers Insurance Co. First, although Plaintiff has alleged that certain

[10] In a nightclub setting like The Station, there is a foreseeable risk of fire from a number of sources. Patrons come to a nightclub for the primary purpose of enjoyment that, depending upon the individual, can include listening to live music, dancing, and socializing with friends and acquaintances. However, this is frequently done in a crowded, poorly illuminated environment. Along with this comes alcohol consumption, and frequent cigarette smoking that requires use of lit matches or lighters. If a nightclub like The Station presents live music, high-powered amplifiers, musical instruments and related equipment requiring a substantial electrical power source are common. Inevitably, stage lighting is used as well, not only requiring additional power sources but generating significant heat. In the case of The Station, which would periodically present musical acts with a national reputation, the risk of fire is even greater as such performers, like Great White, may produce and present stage shows that are more elaborate, employing props and pyrotechnics. (See *"Band's pyrotechnics use varied on tour"*, Providence Journal, March 3, 2003).

defendants committed illegal acts by igniting pyrotechnics without the proper permits and licensing, there is absolutely no allegation that the fire at The Station was the result of an arson, unlike the intentional act of arson in Travelers Insurance Co. Second, unlike Travelers Insurance Co., where the court emphasized the fact that a burglar alarm system was discontinued prior to the fire at the premises, it is clear that the Fire Code was enacted to "... safeguard life and property from the hazards of fire and explosives ..." R.I. Fire Safety Code § 1. Therefore, the relationship between a burglar alarm and arson is much more tenuous than the relationship between the enforecment of the Fire Code and a fire. The particular

Defendants' reliance upon Wallace v. Ohio Dept. of Commerce, 2003 WL 22976565 (Ohio App. 10 Dist.) is misplaced. In Wallace, the cause of the fire was arson. Id. at 6. Furthermore, the relevant facts of Wallace were that an annual inspection had not occurred. Id. at 4. Finally, the Wallace opinion specifically states "[I]n this case, for example, *Reynolds* arguably bars liability for the fire marshal's actions if the appellants' harm resulted from *a discretionary* executive decision to forego a seasonal inspection; if, on the other hand, the fire marshal's negligent *performance* of an inspection was the proximate cause of the appellant's harm, R.C. 2743.02(A)(1) allows for liability against the state." Id. at 4. In conclusion, Wallace is easily distinguishable from the case at bar.

C. Even Intentional Criminal Conduct Mav Be Foreseeable

Even in situations where an intentional criminal act occurs, liability may attach to other defendants. For instance, in Welsh Manufacturinq, Division of Textron, Inc. v. Pinkerton's, Inc., 474 A.2d 436 (R.I. 1984), the defendant security service corporation hired a security guard who took part in thefts of the plaintiff's property, while he was on duty at the plaintiff's premises. Id. at 438. The Rhode Island Supreme Court ruled that the criminal acts were reasonably foreseeable:

> We are of the opinion that Lawson's succumbing to temptation and his participation in the criminal thefts might be found by a rational trier of fact to be a reasonably foreseeable result of Pinkerton's negligence in taking reasonable steps to assure its employee's honesty, trustworthiness, and reliability.

474 A.2d at 444. The Court went on to rule that the foreseeability of the criminal act was a jury question.

474 A.2d 444.

CONCLUSION

For the reasons set forth above, Plaintiff respectfully urges that the State Defendants' Motion to Dismiss be denied.

Plaintiffs, Charles Sweet, et al
By Their Attorneys,
BRIAN CUNHA & ASSOCIATES, P.C.

Brian R. Cunha, Esq., R.I.#4074
Karen A. Alegria, Esq., R.I.#6562
311 Pine Street
Fall River, MA 02720
Tel: (508) 675-9500
Fax: (508) 679-6360
brian@briancunha.com
karen@briancunha.com

**CERTIFICATION OF SERVICE**

I hereby certify that on the 7th day of December, 2004 a true copy of the within was e-mailed to:

James A. Ruggieri, Esq.
Gerald C. DeMaria, Esq.
Higgins, Cavanagh & Cooney
123 Dyer Street
Providence, RI 02903

Mark T. Renolds, Esq.
Anthony DeMarco, Esq.
Reynolds, DeMarco, & Boland, Ltd.
170 Westminster Street, Suite 200
Providence, RI 02903

Christopher C. Fallon, Jr., Esq.
Cozen O'Connoer
1900 Market Street
Philidelphia, PA 19103-3508

Marc DeSisto, Esq.
DiSisto Law Office
211 Angell Street, P.O. Box 2563
Providence, RI 02903-2563

James R. Lee, Esq.
Department of Attorney General
150 South Main Street
Providence, RI 02903

Andrew J. Trevelise Esq.
Reed Smith LLP
2500 One Liberty Place
Philadelphia, PA 19103-7301

W. Thomas McGough, Jr., Esq.
James J. Restivo, Esq.
Reed Smith LLP
435 Sixth Avenue
Pittsburgh, PA 15219

Fred A. Kelly, Jr., Esq.
Randall Sousa, Esq.
Nixon Peabody, LLP
One Citizens Plaza
Providence, RI 02903

Edward T. Hinchey, Esq.
Sloane and Walsh LLP
Three Center Plaza, 8th Floor
Boston, MA 02108

Howard A. Merten, Esq.
Vetter & White
20 Washington Place
Providence, RI 02903

William P. Robinson, III, Esq.
Stephen M.Prignano, Esq.
Stephen J. MacGillvray, Esq.
Edward & Angell, LLP
2800 Financial Plaza
Providence, RI 02903

Carl A. Henlein, Esq.
John R. Crocket, III, Esq.
Susan S. Wettle, Esq.
Frost Brown Todd
400 West Market Street, 32nd Floor
Louisville, KY 40202-3363

James H. Reilly, Esq.
Donald Maroney, Esq.
Kelly, Kelleher, Reilly & Simpson
146 Westminster Street, Suite 500
Providence, RI 02903

Thomas C. Angelone, Esq.
Hodosh, Spinella & Angelone
One Turks Head Place, Suite 1050
Providence, RI 02903

James T. Murphy, Esq.
Kelly N. Michels, Esq.
Thomas Bender, Esq.
Hanson Curran LLP
146 Westminster Street
Providence, RI 02903

Donna M. Lamontagne, Esq.
Steven Hayes, Esq.
Zizik, Powers, O'Connell
Spaulding, Lamontagne
40 Westminster Street
Providence, RI 02903

Stephen E. Breggia, Esq.
BREGGIA ABBOTT BOWEN & GRANDE
395 Smith Street
Providence, RI 02908

Faith A. LaSalle, Esq.
One Turks Head Place
76 Westminster Street, Suite 1010
Providence, RI 02903

Scott J. Tucker, Esq.
TUCKER HEIFETZ & SALTZMAN, LLP
Three School Street
Boston, MA 02108

Edward M. Crane, Esq.
Deborah Solmor, Esq.
Skadden, Arps. Slate, Meagher & Flom
333 West Wacker Drive
Chicago, IL 60606

James H. Reilly, Esq.
Donald Maroney, Esq.
Kelly, Kelleher, Reilly & Simpson
146 Westminster Street, Suite 500
Providence, RI 02903

Christopher C. Fallen Jr. Esq.
Cozen & O'Connor
1900 Market Street
Philadelphia, PA 19103

Curtis R. Diedrich, Esq.
SLOANE AND WALSH LLP
127 Dorrance Street
Providence, RI 02903

Karen A. Alegria, Esquire